# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**COMMITTEE OF CONCERNED MIDWEST
FLIGHT ATTENDANTS FOR FAIR AND
EQUITABLE SENIORITY INTEGRATION,
CATHERINE REED, TINA LITKOWSKI,
MEGAN CASH, ASSOCIATION OF FLIGHT
ATTENDANTS CWA AFL-CIO,**

Plaintiffs,

**Case No. 10-C-379**

-vs-

**INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, INTERNATIONAL BROTHERHOOD
OF TEAMSTERS AIRLINE DIVISION, TEAMSTERS
LOCAL 135, REPUBLIC AIRLINES, Inc., and
REPUBLIC AIRWAYS HOLDINGS, Inc.,**

Defendants.

## DECISION AND ORDER

This matter comes before the Court on cross-motions to reconsider the Court's previous order denying cross-motions for summary judgment. *Comm. of Concerned Midwest Flight Attendants for Fair and Equitable Seniority Integration v. Int'l Bhd. of Teamsters*, — F. Supp. 2d —, 2010 WL 3860366 (E.D. Wis. Sept. 30, 2010). In that order, the Court considered whether the 2009 purchase of Midwest Airlines by Republic Airways Holdings, Inc. ("RAH") was subject to the McCaskill-Bond Amendment, which would entitle the plaintiffs, a group of former Midwest flight attendants, to seniority integration proceedings with Republic flight attendants. 49 U.S.C. § 42112, note, § 117(a). The International

Brotherhood of Teamsters and the Teamsters Local 135 (collectively, "IBT" or the Teamsters) oppose seniority integration. On reconsideration, the Court finds that the plaintiffs are not entitled to seniority integration pursuant to McCaskill-Bond.

McCaskill-Bond provides as follows:

> With respect to any covered transaction involving two or more covered air carriers that results in the combination of crafts or classes that are subject to the Railway Labor Act [] (45 U.S.C. 151 et seq.), sections 3 and 13 of the labor protective provisions imposed by the Civil Aeronautics Board in the Allegheny-Mohawk merger (as published at 59 C.A.B. 45) shall apply to the integration of covered employees of the covered air carriers.

49 U.S.C. § 42112, note, § 117(a). A "covered transaction," in pertinent part, is a "transaction for the combination of multiple air carriers into a single air carrier." § 42112, note, § 117(b)(4). In its prior order, the Court reasoned that RAH's purchase of Midwest Airlines resulted in a "combination of multiple air carriers into a single air carrier" because RAH "combined Republic aircraft and management personnel with Midwest's brand name, routes, employees (except flight attendants) and code-share arrangements with other airlines. Midwest surrendered its certifications, and Republic Airlines became certified by the FAA and IATA to operate 'Republic Airlines d/b/a Midwest' using Midwest's former 'YX' designator code." *Comm. of Concerned Midwest Flight Attendants* at *6. The Court denied the competing motions for summary judgment because there was a "genuine issue of material fact regarding whether the purpose of the . . . transaction was to combine multiple air carriers into a single air carrier." *Id.*

However, McCaskill-Bond's requirement that a transaction be "for the combination of multiple air carriers into a single air carrier" is directly informed by the scheme of labor protective provisions (LPPs) adopted by the Civil Aeronautics Board in *Allegheny-Mohawk*. 59 C.A.B. 19, 45 (1972), Appendix B. LPPs are no longer imposed as a matter of course in the context of airline transactions, but McCaskill-Bond resuscitated LPPs to a limited extent. § 42112, note, § 117(a). As a whole, "LPPs were not created to insure employees against any and all economic changes or conditions that in some way adversely affect their employment. . . . LPPs were intended to cover only changes in employment which are 'fairly attributable to the merger.'" *In re Cont'l Airlines Corp.*, 60 B.R. 472, 480-81 (Bankr. S.D. Tex. 1986).

Section 3, the "seniority integration" LPP and the only substantive LPP adopted in McCaskill-Bond, provides that "[i]nsofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner . . ." *Allegheny-Mohawk* at 45, Appendix B. Accordingly, McCaskill-Bond implicitly incorporates the CAB's corresponding definition of a "merger" as "joint action by the two carriers whereby they unify, consolidate, merge, coordinate or pool in whole or in part their separate airline facilities or any of the operations or services previously performed by them through such separate facilities." *Id.*, Section 2(a). Indeed, the genesis for McCaskill-Bond was the operational merger of American Airlines and TWA, resulting in the integration of the two airlines' operations and workforce. *Comm. of Concerned Flight Attendants* at \*5; Second Declaration of William Wilder, D. 34, Exhibit B. When viewed

in this light, it is apparent that RAH did not combine multiple air carriers – Republic and Midwest – into a single air carrier.

Essentially, RAH purchased the assets of a failing airline, one that was scheduled to lose its entire fleet of leased aircraft soon after the transaction, hoping to capitalize on the goodwill associated with the Midwest brand. Prior to the acquisition, Republic serviced Midwest routes through a code-sharing arrangement. 14 C.F.R. § 257.3. This continued after the acquisition up until the point Midwest lost its fleet and ceased operations. Even though Republic assumed the Midwest trade name after Midwest stopped operating, this was not a "merger" or a "combination of multiple air carriers into a single air carrier" as contemplated by McCaskill-Bond or *Allegheny Mohawk*. Republic subsequently began servicing many of Midwest's former routes, but it did so with Republic aircraft and Republic flight attendants, and it eventually stopped using the Midwest brand name altogether. There was no duplication of flights and no overlap of routes resulting from the transaction. Duplication of routes was impossible because Midwest's aircraft were returned to Boeing, not acquired by RAH and then operated by Republic. "LPPs were meant to alleviate the particular effects of the merger itself, such as abandonment of duplicative routes, consolidation of facilities, or the unique problems of putting together two work forces, in recognition of the fact that '[i]n merger cases there are inherent problems with duplicative work and the integration of seniority lists . . .' By contrast, *LPPs are not justified and not imposed at all where there is no concern about duplicative routes and facilities or redundant*

-4-

*work forces.*" *In re Cont'l Airlines Corp.* at 481 (internal citations omitted) (emphasis added).

For similar reasons, McCaskill-Bond does not require seniority integration of the former Midwest flight attendants because the transaction did not result in a "combination of crafts or classes that are subject to the Railway Labor Act." § 42112, note, § 117(a). Plaintiffs place great emphasis on the National Mediation Board's "single carrier" determination, in which the NMB ruled that "Chautauqua, Shuttle, RA and Midwest (now MWA) are operating as a single transportation system (Republic) for the craft or class of Flight Attendants." *In re Chautauqua*, 37 N.M.B. 148, 149 (March 11, 2010), D. 10-20; *In re Republic Airlines*, 37 N.M.B. 174 (April 6, 2010), D. 10-21. The purpose of a "single carrier" determination is to settle a representation dispute for a particular craft or class of employees under the Railway Labor Act. 45 U.S.C. § 152, Ninth; *Int'l Bhd. of Teamsters Airline Div. v. Frontier Airlines, Inc.*, — F.3d —, 2010 WL 5060260, at *1 (7th Cir. Dec. 13, 2010). The NMB considers a number of factors in making its "single carrier" ruling, only one of which is whether the carriers combined management and labor operations.[1] The NMB rulings include statements suggesting that Midwest and Republic were "combined" or "merged," but this does not mean, as a matter of law, that the Midwest flight attendants were combined with a separate group of flight attendants as required by McCaskill-Bond. *See,*

---

[1] The NMB also considers whether a combined schedule has been published; how the carriers advertise their services; whether reservations systems are combined; whether tickets are issued on one carrier's stock; whether signs, logos, and other publicly visible indicia have been changed to indicate only one carrier's existence; and whether the process of repainting planes and other equipment, to eliminate indications of separate existence, has progressed. NMB Rep. Manual § 19.501.

*e.g., AFA v. USAIR, Inc.*, 24 F.3d 1432, 1437-38 (D.C. Cir. 1994) (a "single craft or class of employees on a particular carrier may not have more than one certified representative, but members of that class may be covered by different collective bargaining agreements").

In many respects, and as the Court previously concluded, RAH's acquisition of Midwest Airlines could be viewed as a transaction for the combination of multiple air carriers into a single air carrier, especially since Republic emerged using Midwest's trade name. Other groups of employees were apparently integrated, but any collateral arrangement with a separate craft or class of employees is not dispositive in this context.[2] The Teamsters' stance with respect to flight attendants is unfortunate for the plaintiffs, but the Teamsters are merely protecting the interests of Republic flight attendants subject to displacement if the seniority lists are merged. Ultimately, the plaintiffs are on the outside looking in because Midwest failed as an air carrier, not because Republic purchased Midwest. McCaskill-Bond was never meant to protect the employees of an air carrier that simply goes out of business.

---

[2] *IBT v. Frontier Airlines*, No. 10-C-203-LA (E.D. Wis.), D. 26-1 and 26-2 (Teamsters Local 135's agreement to integrate Republic and Midwest seniority lists for fleet and passenger service employees); Declaration of William Wilder, ¶¶ 1-2, D. 17 (describing seniority integration for former Midwest pilots).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. IBT's motion for reconsideration [D. 31] is **GRANTED**;

2. The Teamsters' motion for partial summary judgment on Count I of the complaint [D. 8] is **GRANTED**;

3. Plaintiffs' motion for reconsideration [D. 24] is **DENIED**; and

4. Plaintiffs' motion for partial summary judgment on Count I of the complaint [D. 10] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 10th day of January, 2011.

                                                **SO ORDERED,**

                                                *s/ Rudolph T. Randa*
                                                **HON. RUDOLPH T. RANDA**
                                                **U.S. District Judge**